IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN MIELOSYK, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 19-cv-1237-RJD |
| vs. | ) |
| | ) |
| PHILLIP BAKER AND CAROL MCBRIDE, | ) |
| | ) |
| | ) |
| Defendants. | ) |

# ORDER

**DALY, Magistrate Judge:**

This matter comes before the Court on Defendants' Motion for Summary Judgment (Docs. 33, 34, and 35). Plaintiff did not file a Response. As explained further, Defendants' Motion is GRANTED.

## Background

Plaintiff, formerly incarcerated within the Illinois Department of Corrections, filed this lawsuit *pro se* pursuant to 42 U.S.C. §1983 on November 12, 2019 (Doc. 1). He alleged that Defendants violated his statutory and Constitutional rights at Pinckneyville Correctional Center ("Pinckneyville") when they forced him to get out of his wheelchair and board a non-wheelchair accessible bus to transport him to Dixon Correctional Center ("Dixon"). Following the Court's threshold review conducted pursuant to 28 U.S.C. §1915A, Plaintiff's claim proceeded against Defendants on one Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical needs (Doc. 14). Plaintiff was released from prison in August 2020 and informed the Court of his new address in Rockford, Illinois (Doc. 13).

Defendants filed their Motion for Summary Judgment on December 20, 2021 (Docs. 33

and 34). They also filed and sent a Notice to Plaintiff, explaining the consequence of failing to respond to their Motion (Doc. 35). The Local Rules of this District provide that a failure to respond to a motion for summary judgment "may, in the Court's discretion, be considered an admission of the merits of the motion." SDIL-LR 7.1(c). Plaintiff never responded to Defendants' Motion. The Court will treat Plaintiff's lack of Response as an admission of the allegations of undisputed material facts and determine whether summary judgment is appropriate on that basis.

**Plaintiff's deposition testimony**

On November 3, 2021, Plaintiff testified remotely at a deposition from his home in Rockford, Illinois at the same address he provided the Court in August 2020 (Doc. 34-1, pp. 6, 12; Doc. 13). He testified that in 2017, he was "fighting a [criminal] case in Ogle County" while incarcerated at Pinckneyville and would travel on court writs from Pinckneyville to Dixon for the court proceedings (Doc. 34-1, p. 17). The transfer at issue in this case occurred on November 15, 2017 (Doc. 34-1, p. 60; *see also* Doc. 12, p. 6). Prior to November 15, 2017, Plaintiff had traveled on a writ from Pinckneyville to Dixon 3-4 times; the most recent trip occurred approximately in September or October 2017 (Doc. 34-1, pp. 60, 61). For those 3-4 prior trips, Plaintiff was able to get on the bus and "move around a little bit" with some help from prison staff (*Id.*, p. 60). While Plaintiff had not interacted with Defendants McBride and Baker prior to November 15, 2017, they had observed inmates pushing Plaintiff in a wheelchair to commissary or the healthcare unit or around his cell house (*Id.*, p. 68, 69).

Plaintiff testified that on November 13, 2017, he received a used wheelchair from the physical therapy department to use until a new wheelchair arrived at Pinckneyville for him. (*Id*, p. 47-48). Plaintiff further explained that on the morning of the transfer, he was escorted in his wheelchair from his cell to a "dayroom" where chairs were lined up with inmates waiting to get on a bus (*Id.*, p. 52). Plaintiff sat in one of the seats and his wheelchair was placed in a corner of the room (*Id.*).

When it was time for him to get on the bus, Plaintiff said "give me my wheelchair" and Defendant Baker yelled in his face "how do you p***" and then went outside to escort the rest of the inmates (*Id.*, p. 51, 52).   Defendant McBride came over to Plaintiff, who was still sitting in his chair, and said "if you don't get on the bus, you just go into seg" (*Id.*, p. 51).   Plaintiff said "I can't" (*Id.*).   Someone told him "there's no paperwork here states that you need the wheelchair" and Plaintiff then said "two days ago, [the physical therapist] prescribed me a wheelchair." (*Id.*, p. 53).   Then "they" brought him his wheelchair, made him get into the wheelchair, wheeled him to the bus, and said "okay, now, get on your hands and knees and crawl up onto that bus" (*Id.*, p. 51).   Plaintiff said "I can't" but ultimately did "what [he] was told" (*Id.*).   Plaintiff had to crawl up four steps to board the bus (*Id.*, p. 54).

Defendant McBride wheeled Plaintiff's wheelchair back into the building (*Id.*, p. 65). Defendant Baker followed behind the bus in another vehicle, and when the bus made stops at other correctional centers prior to Dixon, Defendant Baker boarded the bus.   (*Id.*, p. 64).   Plaintiff recalls that Defendant Baker "told me that I was right, that they radioed him and found my paperwork stating that, yeah, I was supposed to have had the wheelchair, and…he apologized" (*Id.*).

**UNDISPUTED MATERIAL FACTS**

In 2017,  Defendant Baker was a correctional lieutenant at Pinckneyville (Doc. 34-4).   At times, he was assigned "transport staff," which means he assisted with inmates who were transferring in and out of the facility and sometimes followed the transport buses in a vehicle carrying the inmates' master files (*Id.*).   The Shift Commander informs the transport staff which inmates need wheelchair accessible vehicles (*Id.*).   Medical staff determines which inmates require transport in wheelchair accessible vehicles; Defendant Baker does not determine which individuals should be placed in a wheelchair accessible vehicle during transfers (*Id.*).

In 2017, Defendant McBride was also a correctional lieutenant (Doc. 34-5).   At times, she

was assigned to the Administrative Building and her responsibilities included identifying inmates before allowing them to proceed to transport buses for court ordered writs (*Id*.). She also assisted in ensuring that inmates were patted down for contraband and properly restrained prior to transport (*Id*.). Medical staff determines which inmates require transport in wheelchair accessible vehicles; Defendant McBride did not determine which individuals should be placed in a wheelchair accessible vehicle during transfers (*Id*.).

Plaintiff's medical records from Pinckneyville include an "Equipment Authorization Form" signed by Plaintiff that reflects he received a wheelchair on November 1, 2017 that was "to be returned upon transfer or discharge from facility" (Doc. 34-2, p. 43, 44). Plaintiff underwent a wheelchair evaluation on November 13, 2017 with a physical therapist that states he was "currently in w/c (borrowed)." The physical therapist ordered a wheelchair for Plaintiff that was approved by Pinckneyville Medical Director on November 14, 2017 (*Id*., p. 40). A nurse at Dixon Correctional Center completed a transfer form on November 16, 2017. (*Id*., p. 33). The form notes that Plaintiff uses a cane, but does not mention a wheelchair (*Id*.).

### Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477

U.S. at 248). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

Uncomfortable prison experiences do not violate the Eighth Amendment. *Thomas v. Blackard*, 2 F. 4th 716, 719 (7th Cir. 2021) (internal citations omitted). Negligent acts by prison staff do not violate the Eighth Amendment. *Jones v. Matthews*, 2 F. 4th 607, 612 (7th Cir. 2021). To establish that his Eighth Amendment rights were violated, Plaintiff must satisfy an objective inquiry and a subjective one: 1) that he had an objectively serious medical condition; and 2) that Defendants "were both 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and that they actually drew the inference." *Orlowski v. Milwaukee Cty*, 872 F.3d 417, 424 (7th Cir. 2017) (*quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The record contains evidence to satisfy the objective inquiry. Namely, two days before the events at issue, a physical therapist recommended a new wheelchair for Plaintiff, and Pinckneyville's Medical Director approved it.

As for the subjective inquiry, Plaintiff told Defendants that he required a wheelchair when it came time for him to board the bus. The evidence in the record reflects that Defendants did not believe him because their paperwork stated otherwise. Crawling up the four steps of the bus was undoubtedly an uncomfortable experience, but the evidence does not reflect Defendants were aware (at the time) that forcing Plaintiff to board the bus in whatever manner possible posed a substantial risk of serious harm. Defendants were not the only IDOC staff unaware of Plaintiff's dependence on the wheelchair; a nurse at Dixon also failed to make the notation in Plaintiff's transfer form.

The Court considers the task assigned to Defendants McBride and Baker on that day: to ensure that multiple inmates securely and safely traveled hundreds of miles to other correctional

centers in compliance with court writs. They were not tasked with deciding which inmates required transport in a wheelchair accessible vehicle.

On these undisputed facts, no reasonable jury could find that Defendants were deliberately indifferent. At most, they were negligent for not contacting medical staff or the shift commander to ensure that their paperwork was correct. Considering Plaintiff's testimony regarding the statements made by Defendants during the events in question, all reasonable inferences indicate that Defendants simply did not believe Plaintiff required transport in a wheelchair-accessible vehicle. In this one isolated incident, Defendants relied on their paperwork instead of Plaintiff's insistence that he needed a wheelchair. Defendant Baker did not learn his paperwork was incorrect until *after* he had forced Plaintiff on to the bus. Accordingly, no genuine issue of material fact exists regarding whether Defendants "actually inferred" that forcing Plaintiff to board the bus posed a substantial risk of serious harm to him. Defendants are therefore entitled to summary judgment.

## Conclusion

Defendants' Motion for Summary Judgment is GRANTED. Plaintiff's claims against Defendants are dismissed with prejudice and the Clerk of Court is directed to enter judgment accordingly. Defendants' pending Motions in Limine are denied as moot.

**IT IS SO ORDERED.**

**DATED: 9/28/2022**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**